UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FREMICHAEL GHEBREYESUS,
individually and as Trustee of the Estate of
Ghebreyesus Ghebrelul Fremichael; and
SIMRET ZERAI YOHANNES (A/K/A
SEMRET ZEREYOHANS KELEB),

        Plaintiffs,

    v.

THE FEDERAL DEMOCRATIC REPUBLIC
OF ETHIOPIA, et al.

        Defendants.

Case No. 2:22-cv-01717-RFB-EJY

**ORDER**

Pending before the Court is Plaintiffs' Motion to Compel.  ECF No. 117.  The Court has reviewed the Motion, Defendants' Response (ECF No. 122), and Plaintiffs' Reply (ECF No. 127). The Court finds as follows.

I.    **Procedural History**

Plaintiffs originally brought this action in the District of D.C. on October 28, 2021.  ECF No. 1.  Finding that it lacked personal jurisdiction over all Defendants, that court entered an order transferring the case to the District of Nevada.  ECF No. 34.  In their Complaint, Plaintiffs assert several causes of action against Defendants arising out of the alleged unlawful repossession of Plaintiffs' assets and property in Ethiopia.  ECF No. 1.  Most relevant to the instant Motion is Plaintiffs' allegation that Defendant Brook Bekele Beshah (sometimes "Bekele")[1] "caused money to be wired to the Ethiopian Defendants to further the payment of monetary bribes and/or kickbacks to foreign officials in Ethiopia."  *Id.* ¶ 97.  To help establish this and other claims, Plaintiffs included within their initial Requests for Production ("RFPs"), served on June 15, 2023, a request for "[a]ll

---

[1]    The parties have been inconsistent as to how they refer to Brook Bekele Beshah, with Plaintiffs sometimes referring to him simply as "Brook" and sometimes as "Bekele."  *Compare* ECF No. 1 *with* ECF No. 117.  Because naming conventions in Ethiopia do not utilize surnames in the way Western languages do, and instead rely on patronyms, *see* Nina Evason, *Ethiopian Culture > Naming*, Cultural Atlas (2018), https://culturalatlas.sbs.com.au/ethiopian-culture/ethiopian-culture-naming, the Court cannot assume it is proper to refer to a party by whichever name appears "last" in their full legal designation.  The Court therefore defers to counsel for Defendants and refers to Brook Bekele Beshah as "Bekele."

financial statements for all of [Bekele's] financial accounts in the greatest level of detail they are available for all available years beginning in 2013."  ECF No. 117 at 2.

The timeline as presented by the parties is unclear after this point.  In Bekele's response to this RFP, he objected contending the request was overly broad and stated he would not produce responsive documents unless the Requests were "narrowly tailored … and the Parties execute a Stipulated Protective Order."  ECF No. 119-3 at 10-11.  At some point not specified by Plaintiffs but possibly concurrent with the above objection, Bekele produced bank account statements from Heritage International Bank & Trust Limited ("Heritage"), a Belize bank in which Bekele has a personal and business account.  ECF No. 117 at 4.  Though this initial production was missing statements from certain dates, the parties represent that Bekele later produced the missing statements through multiple supplemental responses following a meet-and confer on December 6, 2023.  *Id.* at 4; ECF No. 122 at 6.  Indeed, Defendant represents that he has of this date, over a series of separate productions, produced every bank statement for every account he owned over the relevant time period.  ECF No. 122 at 6.

On February 15, 2024, approximately two months after Bekele's first supplemental production, Plaintiffs sent a follow up letter stating, *inter alia*, that Bekele "must also produce documents sufficient to understand the transfers reflected in Mr. Bekele's statements from his [Heritage] account."[2]  ECF No. 119-9 at 3.  Plaintiffs aver that subsequent to this letter, the parties engaged in "multiple omnibus meet and confers" regarding specific transactions documented in the statements already produced.  ECF Nos. 117 at 5; 119-7 at 3.  Though specific dates for these meet-and-confers are not provided, the timeline provided by Plaintiffs indicates they all occurred prior to May 15, 2024.  ECF No. 119-7 at 3.  Based on the record before the Court, the pre-May 15, 2024 "omnibus" meet-and-confers appear to be the last time the parties discussed these discovery requests

---

[2] The Court notes that despite Plaintiffs' representations to the contrary, this request was outside the scope of Plaintiffs' original RFP that sought only "financial statements for all of [Bekele's] accounts." ECF No. 119-3. Because Plaintiffs had not, at this point, submitted a Second Request for Production, Bekele, having produced the financial statements requested in the initial RFP, was not obligated under Federal Rule of Civil Procedure 34 to produce these additional documents. *See Britton v. Dall. Air Motive, Inc.*, Case No. CV-07-547-EJL-LMB, 2009 U.S. Dist. LEXIS 125521, at *14 (D. Idaho Oct. 30, 2009) ("[L]etters, emails and other informal communications do not create a basis for relief under Rule 37 … Formal requests clearly implicate the duties of opposing parties to respond, pursuant to Rule 34. Letters do not.") (internal quotations omitted).

in person or telephonically.  Confirming this, Bekele avers that "the last meet and confer in this case took place in May 2024."  ECF No. 122 at 10.

On May 15, 2024, Plaintiffs served their First Set of Interrogatories, one of which requested additional information regarding nineteen transactions listed in the Heritage bank statements produced by Bekele.  ECF No. 120-10 at 4-5.  Specifically, for each transaction Plaintiffs asked Bekele to "identify to whom the payment was made, the SWIFT[3] or BIC[4] code associated with the transaction, the routing number if any, the purpose for such payment, and any records that reflect the details of such transaction."  *Id.*  Bekele served his responses on June 28, 2024, providing individual answers, about one paragraph in length for each transaction, identifying to whom he believed each transaction was sent.  ECF No. 120-11.  In most of his responses, Bekele stated that he did not have any documents in his possession to confirm this information "despite an attempt to verify the same," but noted that "in the event [he] locates documents that clarify any of the above transactions, [he] will supplement each of the above responses."  *Id.*

Also on May 15, 2024, Plaintiffs served their Second RFPs, which included a request for Bekele to "[p]roduce all DOCUMENTS referred to in your response to Interrogatory No. 3[.]"  ECF No. 119-12 at 6 (emphasis in original).  Given this RFP was served simultaneously with the referenced interrogatory, the Court reasonably presumes this was a preemptive request made on the assumption Bekele would refer to documents in his eventual responses.  However, as explained above, Bekele's response stated that he had no such documents in his possession.  ECF No. 120-11.  Bekele's response to Plaintiff's Second RFPs confirmed that he "ha[d] produced all documents which were referred to in answering Interrogatory No 3," but that he was "in the process of obtaining additional bank statements" and would disclose these statements upon obtaining them.  ECF No. 22 at 76.

---

[3]    The Society for Worldwide Interbank Financial Telecommunication ("SWIFT") is a telecommunications network which serves as the primary method for facilitating international transactions between financial institutions. Susan V. Scott & Markos Zachariadis, *The Society for Worldwide Interbank Financial Telecommunication (Swift): cooperative governance for network innovation, standards, and community* (2014).

[4]    A Business Identifier Code ("BIC") is a unique identifier issued to financial institutions by SWIFT for use on its network and is often also referred to as a "SWIFT code", "SWIFT ID", or "ISO 9362 code."  S.M. Ikhtiar Alam, *What is SWIFT in International Banking?* 3 (2022).

On June 13, 2024, Plaintiffs took Bekele's deposition.  ECF No. 120-5.  At this deposition, Bekele was asked several questions regarding the nineteen transactions at issue, as well as about his Heritage accounts in general.  Bekele responded at various points that he would inquire with Heritage about obtaining additional statements and information as to the meaning of certain notations used in previously produced statements.[5]  *See generally, id.*  Two months later on August 14, 2024, Plaintiffs sent Defendants a letter following up on these responses, stating they had yet to receive any additional documents or information referenced in Bekele's deposition.  ECF No. 119-13.  Defendants responded on September 13, 2024, by producing the additional bank statements Bekele had requested from Heritage together with written responses to each category of documents/information listed in Plaintiffs' letter.  ECF No. 120-1.  In these written responses, Defendants stated that "[a]ll of the company statements, audits, personal account statements, and responsive documents have now been produced" and, with regard to Plaintiffs' requests for explanations of specific transactions, Defendants "affirm there are no supporting documents that could be located."  *Id.*

Fact discovery closed on September 30, 2024.  ECF No. 106.  Based on representations by the parties, the only communication regarding this issue following close of discovery was an email from Plaintiffs' counsel on October 24, 2024, notifying Defendants that statements from Bekele's personal account from 2020 and 2023 were missing from Defendants' September 13 disclosure in what appeared to be a labeling error.  ECF No. 122 at 49.  Defendants addressed this omission four days later on October 28, 2024.  Based on what is before the Court, this is the last communication between the parties regarding Bekele's bank statements or the relevant transactions prior to Plaintiffs filing the instant Motion to Compel on February 14, 2025.  ECF Nos. 117 at 10-11; 122 at 11.

---

[5]    Plaintiffs represent Bekele as having stated he would provide or inquire into the existence of "multiple categories of documents" responsive to Plaintiffs' requests.  ECF No 117 at 10.  However, a review of the portions of the deposition transcript cited by Plaintiffs shows no instance in which Bekele referred to any type of document other than bank statements in response to questions regarding his accounts or specific transactions.  *See generally*, ECF No. 120-5.  Bekele has declared under penalty of perjury that he has produced all statements from all of his bank accounts for the requested time period.  ECF No. 122 at 23-29.

1  **II.    Discussion**

2        Through their Motion, Plaintiffs seek an Order compelling Bekele to supplement his

3  responses to Plaintiffs' Interrogatory No. 3 and Request for Production No. 21 by providing detailed

4  information on nineteen wire transfers, including SWIFT codes or other information sufficient to

5  identify the recipient of each transaction, as well as producing documents containing such

6  information.  ECF No. 117.  Plaintiffs also seek an award of attorney's fees.  *Id.*  The Court finds

7  Plaintiffs have not met their meet and confer obligations with regard to the information sought in the

8  instant Motion to Compel and, therefore, requires the parties to engage further in sincere efforts to

9  resolve the issue presented before the Court will consider whether an order compelling Defendants

10  to do anything is appropriate.  Plaintiffs' request for attorney's fees is denied.

11        Under Local Rule 26-6(c) "[d]iscovery motions will not be considered unless the movant (1)

12  has made a good-faith effort to meet and confer as defined in LR IA 1-3(f) before filing the motion,

13  and (2) includes a declaration setting forth the details and results of the meet-and-confer conference

14  about each disputed discovery request."  The Court finds Plaintiffs failed to comply with these

15  requirements in filing the instant Motion.  In the declaration attached to the Motion, Plaintiffs'

16  counsel avers that the parties engaged in "multiple omnibus meet and confers" after their February

17  15, 2024 letter.  ECF No. 119-7 at 3.  However, as explained above, these meet-and-confers all

18  appear to have occurred *before* May 15, 2024, the date on which Plaintiffs served their

19  Interrogatories and Second RFPs.  There is no evidence of any in-person or telephonic discussion

20  between the parties regarding discovery since then.

21        Throughout their briefs, Plaintiffs characterize certain letters sent subsequent to Bekele's

22  responses to the Interrogatories and RFPs as "meet and confer letters" or "written meet and confers."

23  *See*, *e.g.*, ECF Nos. 117 at 10; 127 at 5.  However, the Local Rules are clear that letters do not qualify

24  as meet-and-confers.  LR IA 1-3(f) defines to "meet and confer" as "to communicate directly and

25  discuss in good faith the issues required under the particular rule or court order."  The Rule further

26  specifies that "this requirement may only be satisfied through direct dialogue and discussion in a

27  face-to-face meeting, telephone conference, or video conference," and that "[t]he exchange of

28  written, electronic, or voice-mail communications does not satisfy this requirement."  LR IA 1-3(f).

There is no ambiguity in this definition on which Plaintiffs may rely. Plaintiffs' Motion seeks to compel additional responses to Interrogatory No. 3 and RFP No. 21, yet an application of the plain text of the relevant Local Rule shows that the last proper meet-and-confer took place *before* either of these were ever served on Defendants.

Even if the Court were to construe these later written communications as valid substitutes for conferring in person or telephonically, they still would not satisfy LR 26-6(c) because the merits of the underlying discovery dispute were never discussed. A sincere effort to meet and confer occurs "[o]nly after all the cards have been laid on the table, and a party has meaningfully assessed the relative strengths and weaknesses of its position in light of all available information." *Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118, 120 (D. Nev. 1993). Plaintiffs' August 14, 2024 letter inquired into the status of documents Bekele mentioned he was attempting to locate during his deposition. ECF No. 119-13. Bekele responded a month later by producing the additional bank statements he requested from Heritage, affirming there were no other responsive documents. ECF No. 120-1. There was no further response from Plaintiffs, written or otherwise, arguing that Bekele was obligated to produce more, or suggesting any actions Bekele should take to obtain additional information regarding the transactions at issue.

In fact, the only communication Plaintiffs sent regarding this supplemental production, an email exchange from September to October of 2024, was to notify Defendants' counsel that statements from certain dates appeared to be missing due to an error with Dropbox. ECF No. 122 at 49-54. This error was addressed, and at no point in this exchange did Plaintiffs' counsel argue, as they do now, that the statements that had been produced were non-responsive or that Defendants were "stonewall[ing] … discovery efforts." ECF No. 117 at 15. Plaintiffs' decision to represent this email exchange as a "follow up to address Bekele's failure to produce the requested information," appears to concern a misapprehension of the record. *Id.* at 10. Further, although Plaintiffs argue Bekele has not complied with discovery by refusing to disclose information such as SWIFT codes for the relevant transactions, this alleged deficiency is not mentioned in any of the written communications between May of 2024 and the date the instant Motion was filed.

The Court is also skeptical of Plaintiffs' characterization of Bekele's actions throughout the discovery process. Plaintiffs contend they "relied on Bekele's representations that he was actively working to obtain the requested information," until eventually "it became clear that Bekele was not going to supplement production." ECF No. 128 at 2. Not only does this statement belie the fact that Bekele supplemented his responses several times, but it also appears from the record that Bekele ultimately produced everything he indicated he could and would. For example, Plaintiffs cite to a portion of Bekele's deposition transcript in which he stated he would produce statements from his business account with Heritage. ECF No. 117 at 10 (citing ECF No. 120-5 at 17). Bekele produced these statements in his Eighth Supplemental Disclosures. ECF No. 122 at 39. Plaintiffs even acknowledge that when they later sent the October 2024 email notifying defense counsel that certain statements were missing, "Bekele responded with a Ninth Supplemental Production to reproduce bank statements." ECF No. 119-7 at 4. Plaintiffs now assert that these bank statements did not contain "any additional information requested." *Id.* However, as explained above, Plaintiffs' email only requested that the missing statements be produced; it did *not* request any additional information. ECF No. 122 at 49-54.

It is understandable for Plaintiffs to be frustrated that the documents they requested ultimately did not contain SWIFT codes for the relevant transactions. It is not accurate to characterize Defendants as having mislead them in any way. Bekele stated that he would supplement his responses with any additional responsive documents he could obtain, and by all indications in the record he has done so. Though Plaintiffs assert the relevant SWIFT codes or account numbers must have been used by Heritage in order to execute the wire transfers in question, ECF No. 117 at 13, they do not dispute that such information is not contained in Bekele's bank statements, nor do they suggest what other documentation in Bekele's possession would contain this information. Rather, having realized the documents they requested do not contain the information they seek, they now portray Bekele as having stonewalled their discovery requests thereby necessitating judicial intervention. ECF 117 at 15.

In making these observations, the Court does not mean to downplay legitimate concerns Plaintiffs may have with Defendants' efforts to obtain the information they seek. The Court shares

Plaintiffs' concern that Bekele does not seem ever to have specifically requested the SWIFT codes associated with the wire transfers in question. Rather, Bekele seems to rest on the fact that the bank statements Heritage sent him did not automatically contain SWIFT codes for each transaction. ECF No. 122 at 23-24. However, as the moving party, it was Plaintiffs' obligation to engage in good faith efforts to meet and confer regarding what, if anything, Bekele was obligated to reasonably do to obtain these codes before filing a Motion to Compel.

The procedural requirements of LR 26-6 exist for a reason. *See Mendoza v. Amalgamated Transit Union International*, Case No. 2:18-cv-00959-JCM-CWH, 2019 WL 9100188, at *5 (D. Nev. June 24, 2019) ("The meet and confer requirement is more than a formalistic prerequisite, and the parties must treat the process as a means to substitute judicial resolution.") (internal quotations omitted). While many motions to compel center on issues of relevance and proportionality, here there seems to be a chasm between the parties regarding *how* Bekele may or could obtain the information from Heritage, let alone whether the burden of such a method would be proportional to the needs of the case. This is precisely the sort of issue that should be narrowed and brought into focus through the meet and confer process before being presented to the Court for resolution.

**III.    Conclusion**

Based on the foregoing, the Court denies Plaintiffs' Motion to Compel. The parties *must* meet and confer to specifically, in good faith, and toward a goal of resolution, discuss what, if any, documents other than bank statements may contain the SWIFT/BIC information Plaintiffs seek for the nineteen transactions in question and whether those records are obtainable upon request by Bekele. The parties must also discuss alternate procedures for obtaining such information from Heritage, such as through procedures under the Hague Convention. It may be that such information is only available through international procedures. It may be that if Bekele cooperates with Plaintiffs (as he appears to have done to date) Heritage will provide that information to Bekele without having to engage in a Hague Convention effort that the Court knows is often a long and arduous process. Only once such discussions have occurred, and only if the parties are unable to come to a satisfactory resolution, may Plaintiffs file a renewed Motion to Compel.

**IV.    Order**

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion to Compel (ECF No. 117) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs must engage in a good faith attempt to meet and confer in compliance with the Local Rules before they may file a renewed Motion to Compel. Any such meet-and-confer must also comply with the substance of this Order as stated above.

Dated this 16th day of June, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE