UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FREMICHAEL GHEBREYESUS, individually and as Trustee of the Estate of Ghebreyesus Ghebrelul Fremichael; and SIMRET ZERAI YOHANNES (A/K/A SEMRET ZEREYOHANS KELEB),

Plaintiffs,

v.

THE FEDERAL DEMOCRATIC REPUBLIC OF ETHIOPIA, et al.

Defendants.

Case No. 2:22-cv-01717-RFB-EJY

**ORDER**

Pending before the Court is Plaintiffs' Motion to Reopen Discovery. ECF Nos. 146 (redacted) 147 (sealed).[1] The Court reviewed the Motion, Defendants' Response (ECF No. 154), and Plaintiffs' Reply (ECF No. 156). The Court grant's Plaintiffs' Motion to the extent stated below.

I.      **Procedural History**

This case arises from the alleged unlawful repossession of Plaintiffs' assets and property in Ethiopia. ECF No. 1. After litigation concluded in Ethiopia, Plaintiffs filed this action in the United States District Court for the District of Columbia. *Id*. Thereafter, the case was transferred to the District of Nevada where personal jurisdiction over the individual defendant lies. ECF No. 34. Relevant here is Plaintiffs' allegation that Defendant Brook Bekele Beshah ("Bekele") "caused money to be wired to the Ethiopian Defendants to further the payment of monetary bribes and/or kickbacks to foreign officials in Ethiopia." ECF No. 1 ¶ 97.

Plaintiffs first served requests for production of documents (each an "RFP" and together the "RFPs") on June 15, 2023. ECF Nos. 147 at 2, 120-2. Two RFPs requested "all financial statements for all of [Bekele's] financial accounts, including any checking and savings accounts, loan accounts, or credit accounts" as well as "all financial statements" from said accounts "in the greatest level of

---

[1]    ECF Nos. 146 and 147 are identical except for redactions. The Court cites ECF No. 147 only throughout this Order.

1

detail they are available" since 2013.  ECF No. 120-3 at 10.  On July 28, 2023, Bekele objected to the RFPs asserting over breath and producing no responsive documents.  ECF No. 147 at 2-3 (citing ECF No. 120-3 at 10-11).

On December 6, 2023, the parties met and conferred about the RFPs, though it is unclear to the Court what (if any) discovery occurred during the intervening months.  *Id*.  The week following the meet and confer, Bekele produced financial statements for several bank accounts and agreed to supplement his responses "in the near future."  *Id*. *citing* ECF No. 119-8 at 2.  When supplementation did not occur, Plaintiffs sent a deficiency letter dated February 15, 2024.  *Id*. *citing* ECF No. 119-9.  In that letter, Plaintiffs identified one produced document that showed Bekele held a checking account with Heritage International Bank & Trust Ltd. (the "Heritage 0751 Account") that he had not previously disclosed.  *Id*.  Despite multiple meet and confers, Plaintiffs submit Bekele never produced documents pertaining to the Heritage 0751 Account.  *Id*.

The parties stipulated to extend discovery on May 7, 2024.  ECF No. 103.  One week later, Plaintiffs served Bekele with a second set of RFPs, first set of Requests for Admission, and First Set of Interrogatories.  ECF Nos. 147 at 3, 141-10.  In relevant part, Interrogatory No. 1 asked Bekele to identify all bank accounts—personal or business, U.S. or foreign—from January 1, 2009 to the present. ECF No. 119-10 at 4.  Interrogatory No. 3 requested information concerning 19 transactions from several Heritage accounts held by Bekele including information regarding to whom each of the 19 payments was made, "the SWIFT or BIC code associated with the transaction, the routing number if any, the purpose for such payment[s], and any records that reflect the details of such transaction[s]."[2] *Id*. at 4-5.  Despite efforts to define this information, it remains unclear whether the transactions at issue originated exclusively from the Heritage 0751 Account, other Heritage accounts identified by Bekele, or a combination of both.  ECF No. 119-10.

---

[2]    The Society for Worldwide Interbank Financial Telecommunication ("SWIFT") is a telecommunications network which serves as the primary method for facilitating international transactions between financial institutions. Susan V. Scott & Markos Zachariadis, *The Society for Worldwide Interbank Financial Telecommunication (Swift): cooperative governance for network innovation, standards, and community* (2014).  A Business Identifier Code ("BIC") is a unique identifier issued to financial institutions by SWIFT for use on its network and is often also referred to as a "SWIFT code", "SWIFT ID", or "ISO 9362 code."  S.M. Ikhtiar Alam, *What is SWIFT in International Banking?* 3 (2022).

Bekele was deposed on June 13, 2024, before he responded to Plaintiffs' Interrogatories. *Compare* ECF No. 149-2 at 3 *with* ECF No. 149-3 at 12.  At deposition, Bekele testified that neither he nor his company—Biselex—had any additional bank accounts outside of those that had been identified in various discovery responses.  ECF No. 147 at 4 *citing* ECF No. 149-2 at 6.  Bekele also offered testimony about at least two of the transactions identified in Interrogatory No. 3.  ECF No. 149-2 at 20-21.  Throughout the deposition Bekele maintained he would inquire with Heritage about the existence of additional statements and the meaning of certain notations on produced statements. *Id.* at 11, 20-21.

Bekele served Interrogatory responses on June 28, 2024.  ECF No. 149-3.  Despite objecting to the Interrogatories as overbroad, Bekele's response to Interrogatory No. 1 identified nine personal and business bank accounts, all of which appear to have been known to Plaintiffs through prior RFP responses. *Id*. at 4.  Bekele's response to Interrogatory No. 3 lacked SWIFT and BIC codes, routing numbers, and other information requested. *Id*. at 6-8.  Instead, Bekele responded to each of the 19 transactions listed in Interrogatory No. 3 with a paragraph that included what appears to be his best guess or belief as to the recipient and reason for the transaction. *Id*.  In most of the paragraphs, Bekele stated that "despite an attempt to verify the same," he did not have any documents in his possession to confirm the information provided. *Id*.  Bekele further noted that "in the event [he] locate[d] … documents that [did] clarify any of the … transactions," he would supplement his response. *Id*.

When reviewed, Plaintiffs identified inconsistencies between Bekele's deposition testimony and Interrogatory responses related to the 19 identified transactions.  ECF No. 147 at 8.  Plaintiffs sent a deficiency letter on August 14, 2024 listing matters Bekele said he would clarify or investigate post-deposition but never did.  ECF No. 119-13.  Bekele responded on September 13, 2024, stating for each of Plaintiffs' requests, either all responsive documents had been produced or no responsive documents existed.  ECF No. 120-1.

Fact discovery closed on September 30, 2024.  ECF No. 110.  A few weeks later, Plaintiffs' counsel sent an email inquiring about missing bank statements for a two year period from a Heritage

3

account not identified to the Court.  ECF No. 154 at 6.[3]  The parties dispute whether responsive documents were ever produced.  *Compare* ECF No. 119-7 at 4 (stating "Bekele has not produced any" responsive documents) *with* ECF No. 154 at 6 (stating that responsive documents were "immediately" reproduced on October 28, 2024).  Unclear as it may be, this seems to be the last communication between the parties regarding Bekele's bank statements or the relevant transactions prior to Plaintiffs filing their first Motion to Compel on February 14, 2025.  ECF Nos. 147 at 9, 154 at 6-7.

In their February Motion to Compel, Plaintiffs sought to compel more complete responses to Interrogatory No. 3 and RFP No. 21.  ECF No. 117.  Specifically, Plaintiffs wanted detailed information on nineteen wire transfers, including SWIFT codes or other information sufficient to identify the recipient of each transaction, as well as documents containing such information.  *Id*.  The Court denied the Motion on June 16, 2025, finding Plaintiffs did not demonstrate sufficient effort to meet and confer.  ECF No. 145.  The Court ordered the parties, to discuss

> what, if any, documents other than bank statements may contain the SWIFT/BIC information Plaintiffs seek for the nineteen transactions in question and whether those records are obtainable upon request by Bekele.  The parties must also discuss alternate procedures for obtaining such information from Heritage, such as through procedures under the Hague Convention.  It may be that such information is only available through international procedures.  It may be that if Bekele cooperates with Plaintiffs (as he appears to have done to date) Heritage will provide that information to Bekele without having to engage in a Hague Convention effort that the Court knows is often a long and arduous process.  Only once such discussions have occurred, and only if the parties are unable to come to a satisfactory resolution, may Plaintiffs file a renewed Motion to Compel.

*Id*. at 8.  The parties met and conferred on June 24, 2025 (ECF No. 147 at 9); however, neither party addresses the meet and confer, which leads the Court to presume the meeting was uneventful.

After the meet and confer, Plaintiffs (not Bekele) identified "through [Fremichael Ghebreyesus'] father's business channels, additional transaction records, vendor communications, and wire confirmations from certain vendors who had previously wired sums to Biselex."  ECF No. 147 at 9-10.  After Plaintiffs shared the results of their unidentified research with Bekele, Bekele

---

[3]   The parties' presentation of this portion of the timeline is lacking.  When discussing this event, Bekele cites to "ECF No. 122 at Exhibit D."  The Court notes this filing failed to comply with Local Rule IC 2-2 requiring all exhibits to be separately filed.  In any event the "exhibit" includes redacted emails.  ECF No. 122 at 49-50.  However, Bekele did not file a Motion to Seal or a sealed unredacted version of this exhibit as is required.  Local Rule ("LR") IC 6-1.  Both parties fail to clearly present this issue to the Court.

began producing SWIFT and BIC information responsive to Interrogatory No. 1. *Id*. at 10. This started on July 1, 2025 and continued on a rolling basis. *Id*. It is unclear how or on what date, but Plaintiffs submit that through Plaintiff Ghebreyesus' "father's business channels," they were able to identify a new Biselex bank account at DBS Bank Ltd at 12 Marina Boulevard, Marina Bay Financial Centre, Singapore ("Singapore Account"). *Id*.

The parties met and conferred on July 30, 2025, at which time Bekele revealed the existence of yet another previously undisclosed Heritage bank account ("Heritage 0470 Account").[4] *Id*. Then, just three weeks later, on August 21, Bekele stated all available records were produced and any gaps in the records resulted from either expired bank retention policies or because the documents were outside Bekele's possession, custody, or control. *Id*. at 10. Simultaneously, Bekele issued his Tenth Supplemental Disclosure of Witnesses and Documents that included 18 documents. *Id*. Though somewhat murky, it appears the documents disclosed on August 21, 2025 identified at least one new Ethiopian bank account. *Id*. at 11 (explaining that in supplemental answers to Plaintiffs' First Set of Interrogatories, Bekele identified (1) the Heritage 0470 Account (previously identified during the July 30, 2025 meet and confer), and (2) a NIB International High Yield Savings Account ending in 2658 ("NIB 2658 Account")).[5] Bekele denied any knowledge of the Singapore Account. *Id*.

On September 18, 2025, Plaintiffs again sent a formal letter identifying accounts with missing monthly statements, two transactions with missing SWIFT or BIC codes, and the Singapore Account as a "potential undisclosed [bank] accounts." ECF No. 149-8 at 4-5. Plaintiffs' letter cites three instances from Bekele's 2024 deposition where he testified that, outside of bank accounts

---

[4]     At the meet and confer, Bekele's counsel represented that he had no prior knowledge of the Heritage 0470 Account. ECF No. 147 at 10. However, Plaintiffs appear to doubt this representation because "co-counsel located and screen shared a statement from the previously undisclosed account during the very same July 30, 2025 meet and confer." *Id*. at 10. The Court is unsure why bank statement information shared at the meet and confer would imply that defense counsel had knowledge of the account long before the meet and confer.
    Nonetheless, the Court's question is why this bank account was not discovered and disclosed before the July 2025 meet and confer, as this was two and one-half years after discovery commenced in this case. Bekele fails to provide a clear explanation instead offering that upon reviewing "other disclosed records" Bekele remembered the Heritage 0470 Account. ECF No. 154 at 14. Bekele justifies the lapse in memory as reasonable because the Account was open for a short (undefined) period of time before it was closed in January 2020. ECF No. 149-9 at 4.

[5]     It is similarly unclear why the NIB 2658 Account was not disclosed prior to the August 21, 2025 production. Unlike with the Heritage 0470 Account, which Bekele excuses as a lapse of memory, Bekele offers no explanation for the failure to disclose the NIB 2658 Account. *Cf*. ECF No. 154 at 15. In fact, Bekele seems to assert that the NIB 2658 Account was either identified in an earlier production or does not exist. *See id*. at 14.

identified in discovery responses provided at the time of his deposition, he had no other personal or company bank accounts. *Id*. Plaintiffs submit this statement has proven to be untrue based on the newly discovered accounts. *Id*.

Bekele responded on September 25 averring he produced all financial documents within his control. ECF No. 149-9. With respect to the missing SWIFT or BIC codes for two of the 19 identified transactions, Bekele explained such codes were no longer available because one transaction was old and the second was an "internal transfer," meaning between Bekele's two checking accounts so there was no code. *Id*. at 3, 7. Throughout the letter, Bekele laments how time consuming and difficult discovery has been, as Bekele is in his eighties and has been tracking down foreign bank information. *Id*. at 4. Bekele submits that he disclosed what the Court presumes to be the 0470 Heritage Account as soon as he remembered the account. *Id*. Bekele further offers that it was reasonable for him to have forgotten about the account. *Id*. Bekele maintains that he has objected to Plaintiffs' "self-serving definition that conflates Mr. Bekele with Biselex—a foreign entity of Ethiopia and a nonparty to this case." *Id*. Bekele highlights that the parties "agreed years ago" to only require Bekele to produce bank statements within his possession and control. *Id*. Lastly, Bekele again denied knowledge of the Singapore Account. *Id*. at 7.

## II.    Party Arguments

Plaintiffs seek to reopen discovery in order to obtain "additional information concerning specific transactions and financial accounts previously identified … and to discover the existence and records related to additional accounts of Bekele and/or Biselex Ethiopia that Plaintiffs reasonably believe exist." ECF No. 147 at 21. Plaintiffs do not provide more specifics regarding the information they seek until a footnote on page 11 of their Reply brief, which states: "Plaintiffs seek monthly account statements for Bekele's personal and business accounts at DBS Bank in Singapore, Heritage International Bank in Belize, and NIB, CBE, and Awash in Ethiopia." ECF No. 156 at 11, n.4.

Plaintiffs submit that the factors set forth in *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) favor their request and supports a showing of good cause and excusable neglect. ECF No. 147 at 12. Of these factors, Plaintiffs note that trial is not imminent and Bekele

6

will not be unduly prejudiced as the burden of complying with the discovery requests will fall on third parties. *Id*. at 13. Plaintiffs argue they have been diligent throughout discovery because they have sought extensive discovery through Bekele who produced incomplete records at best. *Id*. at 14. Plaintiffs submit they could not have reasonably foreseen the need to subpoena third parties since Bekele represented he had no bank accounts other than the ones identified at the time of his June 2024 deposition. *Id*. at 15. Finally, Plaintiffs argue their request will likely lead to the discovery of relevant evidence as the late disclosure of the additional bank accounts "demonstrates a likely attempt to conceal financial records." *Id*. at 15. To conduct the proposed discovery, Plaintiffs proposes use of procedures established by the Hague Evidence Convention for the Singapore Account and Letters Rogatory for the Belizean and Ethiopian banks. *Id*. at 17.

Bekele argues Plaintiffs have not shown good cause or excusable neglect. ECF No. 154 at 10. Bekele highlights that reopening discovery will delay the resolution of dispositive motions and a potential trial by at least six months, but up to several years. *Id*. at 11. Bekele laments the difficult process of producing documents from foreign jurisdictions and avers he has produced thousands of pages of banking records. *Id*. Bekele suggests Plaintiffs could have better managed the two plus year discovery period by seeking third-party subpoenas at the outset of discovery, or at least no later than at the same time as he filed his February Motion to Compel. *Id*. at 11-12. Bekele argues he will be unduly prejudiced by reopening discovery because he has spent "untold hours" trying to comply with the discovery requests and is entitled to a decision on the merits. *Id*. at 12. Bekele submits the Letters Rogatory will face "a host of problems" and, even if issued, will not likely lead to the discovery of new information because Bekele has produced all that exists. *Id*. In the alternative, Bekele argues that if discovery is reopened, the Court should control what discovery occurs.[6] *Id*. at 18. For example, Bekele suggests the Court should limit Plaintiffs' requests to his personal bank accounts and impose a strict six-month deadline on any efforts. *Id*.

---

[6] Bekele further argues that he should not have to bear the cost of these third-party subpoenas (ECF No. 154 at 18); however, Plaintiffs never argue Bekele should bear the costs.

**III.    Discussion**

      **A.    Legal Standard.**

Federal Rule of Civil Procedure Rule 16(b)(4) allows extensions to the Court's scheduling order "only for good cause and with the judge's consent." The Rule's "good cause standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal quote marks omitted). More specifically, to meet the burden established by Rule 16's good cause standard, the moving party may be required to show she (1) "was diligent in assisting the Court in creating a workable Rule 16 order" …; (2) "that … [his] noncompliance with a Rule 16 deadline occurred … notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference" …; and (3) "that []he was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (internal citations omitted). In sum, a district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (citations omitted).

Local Rules applicable to civil practice in the U.S. District Court for the District of Nevada states that "[a] request made after the expiration of the specified period will not be granted unless the movant or attorney demonstrates that the failure to file the motion before the deadline expired was the result of excusable neglect." LR IA 6-1(a). The Court examines four factors when considering whether Plaintiffs demonstrate excusable neglect here: "(1) danger of prejudice to the opposing party; (2) length of delay and its potential impact on the proceedings; (3) reason for the delay; and (4) whether the movant acted in good faith." *Lemoge v. United States*, 587 F.3d 1188,

1192 (9th Cir. 2009) (internal citation and quotation marks omitted); *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993).

With respect to reopening discovery, the Ninth Circuit has identified the following factors for the Court to analyze: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence. *City of Pomona*, 866 F.3d at 1066. Since these factors largely overlap with good cause and excusable neglect, they are discussed together below.

> **B.** **The Court Finds Good Cause and Excusable Neglect to Support Reopening Limited Discovery for the Purposes Discussed Below.**

To begin, the Court notes Plaintiffs failed to clearly identify what discovery they are seeking. Despite listing five banks in a footnote of Plaintiffs' Reply brief (ECF No. 156 at 11), Plaintiffs' briefing does not discuss either the Awash or CBE banks, let alone explain their alleged diligence in pursing records from these institutions. Without any argument supported by citations to the record, the Court finds Plaintiffs have not established diligence to pursue discovery from the Awash or CBE banks. *Johnson*, 975 F.2d at 609 ("If the party was not diligent, the inquiry should end.").

Next the Court considers whether to allow Plaintiffs to pursue further discovery from the Heritage, NIB, and Singapore Accounts. "Diligence is measured by the conduct displayed throughout the entire period of time already allowed." *Williams v. James River Group Inc.*, 627 F.Supp.3d 1172, 1177 (D. Nev. 2022) (citing *Muniz v. United Parcel Serv., Inc.*, 731 F.Supp.2d 961, 967 (N.D. Cal. 2010). Plaintiffs sought identification of all of Bekele's bank accounts since serving their first set of RFPs on June 15, 2023. ECF No. 147 at 2. In this vein, Plaintiffs have been persistent in their attempt to obtain complete bank records pertaining to the Heritage, NIB, and potential Singapore Accounts from Bekele, and their efforts were met with a slow drip of relevant information.

9

Specifically, regarding the 19 noted transactions Bekele identified on June 28, 2024 in response to Interrogatory No. 3, Bekele stated he lacked BIC or SWIFT numbers, and he repeatedly said "I do not have documents that help me confirm th[ese] … transaction amount[s], despite an attempt to verify the same." ECF No. 149-3 at 7-8. Yet, a year later, beginning on July 1, 2025, Bekele produced documents showing SWIFT and BIC codes for the identified transactions on a rolling basis. ECF No. 147 at 10. This was long after the close of discovery. ECF No. 110. With respect to the Heritage and NIB bank Accounts, Bekele testified he identified all accounts—personal or company—in June 2024, but two new accounts were revealed in August 2025, almost a year after the close of discovery. ECF Nos. 149-2 at 7; 147 at 11.

The Court understands Plaintiffs' frustrations while recognizing the practical reality that obtaining foreign bank records can be an arduous process. Given this reality, the Court finds it was reasonable for Plaintiffs to rely on Bekele to produce documents despite his repeated averments that he produced everything yet continued to produce responsive documents. ECF No. 147 at 10. When subpoenaing domestic nonparties, the caselaw reflects that there is preference to exhaust party discovery first. *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012). While the Court does not find a similar presumption in the case law with respect to foreign institutions,[7] the same concern for preventing an undue burden on nonparties applies.

Still, Bekele argues that Plaintiffs should have foreseen the need to issue third party subpoenas and could have done so two and a half years ago when Plaintiffs first learned Bekele held Ethiopian and Belizean bank accounts. ECF No. 154 at 11. This line of reasoning fails to account for the Heritage 0470 and NIB 2658 Accounts that Bekele only "remembered" around August 2025, over a year after he testified he had no other bank accounts—personal or company—outside the ones previously identified. ECF No. 149-2 at 7, *see SiteLock LLC v. GoDaddy.com LLC*, Case No. CV-19-02746-PHX-DWL, 2023 WL 4661842, at *6 (D. Ariz. July 20, 2023) ("faulting [the movant] for not pursing the requested third-party discovery earlier in this litigation would constitute impermissible burden-shifting" where the nonmovant failed to timely produce discovery).

---

[7]   *Cf. Parsons Xtreme Golf LLC v. Taylor Made Golf Co. Inc.*, Case No. CV-17-03125-PHX-JJT, 2018 WL 3954414, at *2 (D. Ariz. Aug. 17, 2018) (rejecting the contention that a party must "exhaust all other possible means" of discovery before resorting to the Letters Rogatory process).

Moreover, Plaintiffs identified the Singapore Account through their own efforts some time between June and July 2025 (ECF No. 149 at 5), and which Bekele formally denied having on September 25, 2025—one year after the close of discovery.  ECF Nos. 149-9 at 7.  Though sophisticated counsel could have possibly foreseen a need to begin the international discovery process earlier than the instant Motion to Compel, "Rule 16 does not demand prescience from Plaintiff; it only requires diligence."[8] *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, Case No. 5:20-CV-06846-EJD, 2023 WL 8188844, at *3 (N.D. Cal. Nov. 27, 2023).  With hindsight, there will always be arguments about how discovery could have been managed in the name of efficiency, but the record is clear that Plaintiffs have been persistent in seeking information related to the Heritage, NIB and Singapore Accounts.  The Court will not fault Plaintiffs for believing Bekele would continue to produce responsive documents, as he had been all along.  *Inhale, Inc. v. Inhale Health, LLC*, Case No. 2:19-CV-06379-ODW (Ex), 2024 WL 5716549, at *4 (C.D. Cal. Dec. 26, 2024) ("While Defendant could have filed the Motion sooner, and probably should have regardless of the remnants of opposing counsel's prior promises, the Court cannot in this instance fault Defendant for its good faith efforts to resolve the issue without additional motion practice.").

The Court recognizes there is no trial date that will be affected by reopening discovery.  Nevertheless, there is no denying that Plaintiffs' request will delay these proceedings and naturally prejudice Bekele.  *E.g. Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (reopening discovery, and therefore delaying proceedings, supports a finding of prejudice).  To this end, Bekele laments "this case was litigated in Ethiopia for a decade before it was transformed into a U.S. lawsuit." ECF No. 154 at 19.  However, even without minimizing Bekele's frustration with the length of time this matter has been pending, his argument cuts both ways.  True, even setting aside the length of time it was pending in D.C., or more broadly in Ethiopia, this case has been active for nearly three and a half years in the District of Nevada.  ECF No. 35. However, given the passage of time, the Court finds that one final delay to assure Plaintiffs have had an opportunity to gather evidence needed to successfully support their claims is not unduly prejudicial.

---

[8]    Plaintiffs' reliance on *Foley v. Arostegui*, 2019 WL 377639, at *2 (D. Nev. Jan. 29, 2019), is misplaced.  In *Foley*, the Court found the plaintiff to be diligent given her *pro se* status.  *Foley*, 2019 WL 377639 at *2.  Here, we do not have *pro se* parties; indeed, the parties are represented by experienced counsel.

*Pacira Pharms., Inc. v. Rsch. Dev. Found.*, Case No. 2:21-cv-02241-CDS-DJA, 2023 WL 3737499, at *3 (D. Nev. May 30, 2023) (noting the lack of a trial date at the summary judgment stage and public policy favoring adjudication on the merits).

The Court joins in the concern that foreign banks may not have responsive bank statements for the months and years Plaintiffs is requesting.  Indeed, Bekele avers the banks will have little if any responsive documents given the passage of time.  ECF No. 154 at 14.  However, absent from Bekele's argument is any evidence demonstrating policies or practices by any of the noted banks that call for the destruction of documents after a certain amount of time.  And, while Bekele insists he has produced all documents, his argument is inapposite.  *Id*. at 17.  The Court is not faced with the proposition to reopen discovery to compel Bekele to produce documents he submits he does not possess.  Rather, the question here is whether to allow Plaintiffs to independently pursue discovery from foreign institutions that may hold records Bekele lacks.  Given that the accounts at Heritage and NIB were disclosed after the close of discovery, Plaintiffs lacked the opportunity to investigate these accounts during the discovery period.  Ultimately, Bekele's suspicions may be correct—the banks may not provide anything more than what Bekele has obtained—but Plaintiffs need not take Bekele's word for what documents are available.

Lastly, the Court will not limit Plaintiffs' third party discovery requests to only personal accounts as Bekele suggests.[9]  Courts have inherent authority to issue Letters Rogatory and permit

---

[9]    Throughout his Response, Bekele argues that the Motion to Reopen Discovery is the first time Plaintiffs inquired into Biselex's financial accounts.  *See* ECF No. 154 at 9 ("Plaintiffs never requested bank records of non-party Biselex within any Requests for Production") (emphasis removed); *id*. at 14 ("Plaintiffs also raise for the first time the matter of bank account records of the Biselex Company, an Ethiopian business entity that is not a party to this litigation"). Bekele's characterization is not well taken. Plaintiffs sought Biselex's financial statements commencing on May 15, 2024.  ECF No. 120-12 at 5 (RFP No. 14: "All financial statements for BISELEX for the period…"); ECF No. 141-10 ("Interrogatory No. 1: Identify all of YOUR bank accounts, including personal and business…"); 149-2 at 7 (Q: "Other than the accounts that you referenced in Ethiopia and Belize, do you have any other non-U.S. bank accounts, you or the company?" [Bekele]: "No."). To the extent Bekele felt that such requests fell beyond the bounds of discovery under Fed. R. Civ. Pro. 26(b)(1), he could have, after meet and conferring, presented the issue to the Court through a Motion for Protective Order.
   Whether Plaintiffs can show commingling between Bekele's personal and Biselex accounts is a different question.  Plaintiffs say reopening discovery will likely lead to the discovery of relevant evidence "given Bekele's admitted practice of using his personal and Biselex accounts interchangeably."  ECF No. 147 at 15.  To support this proposition Plaintiffs cite a portion of Bekele's deposition explaining that he deposits his mother's dividends—which she receives as a Biselex shareholder—into Bekele's personal bank account.  ECF No. 149-2 at 15.  This fact alone does not support comingling of *business* and personal funds as the funds being deposited are Bekele's mother's personal funds.  Nonetheless, the Court does not foreclose that there may be facts demonstrating potential commingling.

12

discovery through the Hague Convention. *United States v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958); *Finjan, Inc. v. Zscaler, Inc.*, Case No. 17-cv-06946-JST (KAW), 2019 WL 618554, at *2 (N.D. Cal. Feb. 14, 2019). Given Plaintiffs' allegation that Bekele bribed Ethiopian officials to take Biselex and Plaintiffs' other assets (ECF No. 1), the Court finds both Biselex's and Bekele's bank statements are relevant and important to testing the allegations in Plaintiffs' Complaint.

Lastly, Plaintiffs make a greater showing of diligence as to the Heritage 0470 Account and NIB 2658 Account because they were only disclosed 13 months after Bekele testified he had identified all bank accounts and nearly one year after the close of discovery. *See* ECF No. 147 at 11. In contrast, the NIB 9512 and 4427 Accounts and the Heritage 0751 and 3834 Accounts were identified during the discovery period. *See* ECF No. 149-3 at 4. The Court finds that in light of granting Plaintiffs the opportunity to seek documents from these two institutions, as well as the Singapore bank, there is natural efficiency in allowing Plaintiffs to pursue documents related to all of Bekele and Biselex's accounts at these banks. Accordingly, the Court reopens discovery for the limited purpose of issuing Letters Rogatory to Heritage International Bank & Trust Ltd. and NIB International Bank, and Hague Convention procedures to DBS Bank Ltd in Singapore.

**IV.    Order**

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion to Reopen Discovery (ECF No. 146, sealed version at ECF No. 147) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Plaintiffs may proceed with the appropriate international mechanisms for documents production from Heritage International Bank & Trust Ltd., NIB International Bank, and DBS Bank Ltd in Singapore.

IT IS FURTHER ORDERED that Plaintiffs may not pursue discovery from the Central Bank of Ethiopia (CBE) and Awash International Bank in Ethiopia.

IT IS FURTHER ORDERED that after Plaintiffs must work quickly and diligently to ensure Letters Rogatory are issued and Hague Evidence Convention procedures are commenced no later than 60 days after the date of this Order. Any request for an extension of time **must** be supported by a showing of substantial efforts that have prevented Plaintiffs from doing so. Absent substantial efforts, the request for an extension will be denied and the discovery period will close.

IT IS FURTHER ORDERED that upon Letters Rogatory and Hague Convention processes commencing, Plaintiffs must file a status report with the Court every 90 days providing information regarding the responses to their requests.

IT IS FURTHER ORDERED that Plaintiff is granted **one year—365 days**—from the date Letters Rogatory and Hague Convention requests are issued to the respective banks.  If there is no response within that 365 day period, discovery will close and the deadline to file dispositive motions will automatically be set as 45 calendar days thereafter.

Dated this 16th day of April, 2026.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

14